## CASE NO. 24-1102

### IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

———————————

LOIS ANN BROWN,

*Plaintiff-Appellant,*

v.

WAL-MART STORES EAST, LP,

*Defendant-Appellee.*

———————————

On Appeal From The United States District Court
For The Western District Of Virginia At Lynchburg

———————————

## OPENING BRIEF OF APPELLANT

———————————

Allen D. Hawkins
OVERBEY, HAWKINS,
WRIGHT & VANCE, PLLC
P.O. Box 38
Rustburg, VA 24588
434-332-5155
dhawkins@overbeylaw.com

Chad A. Mooney
PLDR LAW, PC
P.O. Box 1080
Lynchburg, VA 24505
434-846-2768
cmooney@pldrlaw.com

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __24-1102__        Caption: __Lois Brown v. Wal-Mart Stores East, LP__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Lois Brown__
(name of party/amicus)


_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                              ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐YES ☑NO
        If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Chad A. Mooney                                Date:        02/09/2024

Counsel for: Lois Brown

- 2 -

[ Print to PDF for Filing ]    [ Reset Form ]

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ................................................................... iii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF THE CASE ...............................................................2

    A. Proceedings..................................................................................2

    B. Facts ............................................................................................2

SUMMARY OF THE ARGUMENT ......................................................7

ARGUMENT ..........................................................................................8

    A. The District Court Erred In Ruling That The Plaintiff Must Prove That The Defendant Had Actual Or Constructive Knowledge Of The Specific Ice Patch That Caused The Plaintiff's Fall And Injury....................9

       1. The General Rule ................................................................9

       2. The Specific Rule Applicable to Unsafe Substances and Objects.........11

       3. The Specific Rule Applicable to Snow and Ice Cases...........................12

       4. The Burden Placed Upon the Plaintiff By the District Court Is Unreasonable And Impossible to Meet In Most Cases.........................16

    B. The District Court Erred in Ruling That That There Is No Evidence that Walmart Failed To Satisfy Its Duty to Maintain Its Premises ...............17

       1. The District Court Failed To Consider Evidence For The Plaintiff That Is In The Record .................................................................18

2. Additional Facts In The Record Provide Evidence From Which a
Jury Could Conclude That Walmart Failed In Its Duty..........................21

C. The District Court Erred In Making Credibility Determinations and
Weighing the Evidence....................................................................25

CONCLUSION....................................................................................27

STATEMENT OF ORAL ARGUMENT ................................................27

CERTIFICATE OF SERVICE ..............................................................29

## TABLE OF AUTHORITIES

### Cases

*Amos v. Nationsbank, N.A.*,
256 Va. 344, 504 S.E.2d 365 (1998) ................................. 13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................................................... 8

*Ashby v. Faison & Assocs.*,
247 Va. 166 (1994) ................................................... 11-12

*Austin v. Shoney's, Inc.*,
254 Va. 134, 486 S.E.2d 285 (1997) ............................... 11

*Castillo v. Emergency Med. Assocs., P.A.*,
372 F.3d 643 (4th Cir. 2004) ......................................... 8

*Colonial Stores, Inc. v. Pulley*,
203 Va. 535, 125 S.E.2d 188 (1962) ........................ 12, 17

*Erie R.R., Co. v. Tompkins*,
304 U.S. 64 (1938) ....................................................... 9

*Great Atlantic & Pacific Tea Co. v. Rosenberger*,
203 Va. 378, 124 S.E.2d 26 (1962) ............................... 12

*Hall v. DLC Mgmt. Corp.*,
2013 U.S. Dist. LEXIS 58467, 2013 WL 1743865
(W.D. Va. Apr. 23, 2013) ............................................ 14

*Hodge v. Walmart Stores, Inc.*,
360 F.3d 446 (4th Cir. 2004) ....................................... 14

*Kings Markets., Inc. v. Yeatts*,
226 Va. 174, 307 S.E.2d 249 (1983) ............................. 13

*Langhorne Road Apartments, Inc. v. Bisson*,
207 Va. 474, 150 S.E.2d 540 (1966) ........................ 13, 18

*Mary Washington Hospital, Inc. v. Gibson*,
228 Va. 95, 319 S.E.2d 741 (1984) ............................... 13

*Memco Stores, Inc. v. Yeatman*,
   232 Va. 50, 348 S.E.2d 228 (1986) ........................................... 12, 13

*Reeves v. Sanderson Plumbing Prods. Inc.*,
   530 U.S. 133 (2000) ................................................................ 8

*Suffolk v. Hewitt*,
   226 Va. 20, 307 S.E.2d 444 (1983) ........................................... 10

*Thomas v. Omni Hotels Mgmt. Corp.*,
   742 F. App'x 729, 2018 U.S. App. LEXIS 21459 (2018) ................ 15

*United States v. Diebold, Inc.*,
   369 U.S. 654 (1962) ................................................................. 8

*Walker v. Memorial Hospital*,
   187 Va. 5, 45 S.E.2d 898 (1948) ................................................ 13

*Winn-Dixie Stores, Inc. v. Parker*,
   240 Va. 180, 396 S.E.2d 649 (1990) ......................................... 12

**Statutes**

28 U.S.C. § 1291 ........................................................................ 1
28 U.S.C. § 1332 ........................................................................ 1

**Rules**

Fed. R. Civ. P. 56 ...................................................................... 8

**Other Authorities**

1 Virginia Model Jury Instructions-Civil Instruction No. 23.030 (2023)
   (LexisNexis, Matthew Bender) ............................................... 10

1 Virginia Model Jury Instructions-Civil Instruction No. 23.040 (2023) ...........9, 10
   (LexisNexis, Matthew Bender)

1 Virginia Model Jury Instructions-Civil Instruction No. 23.050 (2023) ...............11
   (LexisNexis, Matthew Bender)

1 Virginia Model Jury Instructions-Civil Instruction No. 23-110 (2023)
   (LexisNexis, Matthew Bender)...........................................11, 12, 13

iv

1 Virginia Model Jury Instructions-Civil Instruction No. 24.030 (2023)
(LexisNexis, Matthew Bender)............................................................11

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction over this action under 28 U.S.C. § 1332 (diversity jurisdiction).  This personal injury case in controversy exceeds $75,000, exclusive of interest and costs, and involves citizens of different states.  Lois Brown is a resident of Virginia and the Appellee is a Delaware limited partnership with its principal place of business in Arkansas.

After granting the Appellee's motion for summary judgment, the district court granted final judgment in favor of the Appellee on January 12, 2024.  JA571. Lois Brown then timely filed her Notice of Appeal on January 30, 2024.  JA572. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

A.     Whether the District Court Erred In Ruling That The Plaintiff Must Prove That The Defendant Had Actual Or Constructive Knowledge Of The Specific Ice Patch That Caused The Plaintiff's Fall And Injury?

B.     Whether the District Court Erred in Ruling That That There Is No Evidence that Walmart Failed To Satisfy Its Duty to Maintain Its Premises?

C.     Whether the District Court Erred In Making Credibility Determinations and Weighing the Evidence?

## STATEMENT OF THE CASE

### A. Proceedings

This case was filed in the Circuit Court for the County of Campbell on

January 10, 2023, and later removed to the U.S. District Court for the Western

District of Virginia, Lynchburg Division. JA6-12. Following discovery, the

defendant moved for summary judgment. JA20-21. By Memorandum Opinion

entered January 12, 2024, the District Court sustained the motion for summary

judgment. JA560-569. Final order was entered on January 12, 2024, and this

appeal ensued. JA571.

### B. Facts

On the evening of January 27, 2021, the weather was changing. The plaintiff

has a video of the local Lynchburg, Va. television channel 13 WSET 6 p.m.

weather cast. Snow was predicted overnight in the Lynchburg area for the middle

of the night, ending first thing in the morning. The temperature at 3:30 a.m. was

predicted to be 30° with snow and then, at 7 a.m. the temperature was predicted to

drop to 28°. JA180. The heaviest of the snow was predicted to be near and after

midnight, moving out at about 3:30 a.m. Snow was predicted to end by 7 a.m.

Graphics presented to the television audience indicated up to 2 inches of snow with

the storm moving in at 12:00 a.m. JA177. The extent of the snowstorm at 3:30 a.m.

included the Lynchburg area, with freezing temperatures expected at various times

during the evening. JA179. Climatological data for the Lynchburg area from the

National Weather Service and the National Oceanographic and Atmospheric

Administration confirm that the channel 13 forecast was completely accurate.

JA181-183.

Steve Greco, weather expert for the plaintiff, would testify to a reasonable

degree of meteorological certainty that temperatures reached as high as 32 to 34° at

midnight but slowly dropped to 29° at the closest weather station, which likely

reflects similar temperatures at the site. JA216. Temperatures remained freezing

until the morning. The sun came up at 7:38 a.m. The precipitation would have

started about 10:45 – 11:00 p.m. and lasted until 6:15 a.m., but no later than 6:15

a.m. JA214. The majority of the precipitation fell by 4:00 a.m. JA214. The

formation of black ice in the black asphalt parking lot in the morning was likely,

but would be patchy, occurring in some places. Ice melts on top first leaving a

watery appearance on top. JA220-221.

On the morning of January 28, Lois Brown had dropped her ex-husband off

at a doctor's office for a colonoscopy and could not go in due to COVID

restrictions. She decided to go to the nearby Walmart. The roads were clear but

wet. JA73. There was snow on the side of the road in grassy areas. JA272. Even

though the entire Walmart parking lot appeared wet, she drove slowly, choosing a

parking spot that looked clear of ice and snow. JA83-84. There was no dry spot in

the parking lot. JA83-84. When she arrived, no one was putting down any

chemicals or scraping any snow, nor were there any store employees observing, or examining the parking lot areas. JA85-86. There were no cones or warning signage of any kind. JA103.

She was wearing sneakers which were comfortable for inclement weather. She looked down before stepping out, saw water and black pavement (like the rest of the parking lot), stepped out, and immediately fell. She had looked where she was stepping. She was not eating, not drinking, and not distracted in any way. The Walmart video shows the fall at 8:31 am. (Def. Exh. 2A, video at 8:31am).

After she had fallen, it was so slick she could not stand up and had to crawl. JA88, JA92-94. She knew that it was ice, and stated clearly that it was ice. It was so slick that she had to hold onto her vehicle to stand back up. JA88, JA92-94. She moved her vehicle to a safer spot and went in to report the incident to the store manager.

The assistant manager, Anthony Ware, was the acting manager and in charge of the store that day. JA482. He was the highest employee in the store, a salaried manager, and controlled the entire store. He assumed all duties of the store manager and will be referred to herein at times as the manager or manager on duty. JA482. He was responsible for investigating and reporting the facts regarding incidents. JA456. Significantly, Mr. Ware walked out to take photos of the spot where Mrs. Brown fell and said "shit, this is ice. I almost busted my ass this

4

morning, but I was able to grab onto my doorhandle. The crew to clear the lot was supposed to have done so before the store opened, but arrived late." JA315-316. The Customer Incident Report, which is an official Walmart document filled out and filed by Mr. Ware, describes the incident as "Ice made customer fall when getting out of her car." JA467.

Although Lois Brown was wet from her fall on the ice, her clothes had no salt or chemicals on them. Her injured thumb began to hurt her immediately, and she also had pain in her shoulder and hip. JA117, JA121. She immediately sought treatment for her injuries.  JA121-122.

The Walmart Corporate Designee testified that the store opened at 6 a.m. that morning. JA438. She said they have a contractor who was required to clear the lot of ice and snow.  There are approximately 40 Walmart employees on the premises when the store opens. JA374-375. Walmart does not want its employees clearing snow, and only want to rely on contractors. JA420. Walmart took no actions whatsoever to find out if the contractor performed per its contract, even though it was clear to the store manager that the contractor had arrived late and had performed inadequately. JA492, JA494, JA499-500, JA503-504.

The investigation by Walmart into this incident did not reveal any communications from management to the store employees or manager regarding inclement weather or the expectation of inclement weather. JA423. Walmart does

not know when the contractor started or finished. JA434. Walmart does not know

whether anyone went out to inspect the parking lot after the contractor left. JA435.

Walmart has no knowledge of anyone reporting the condition of the parking lot

after the contractor left, or even looking to see if the job was done properly. JA436.

No one verified what products, if any, were being applied to the parking lot, and no

one put up any signs or warnings. JA438.

Walmart produced a video of a pickup truck with a snow blade raised, not

scraping, driving for 17 seconds down the automobile aisle at 7:31 am, but not

driving in or near the parking spaces where customers, including Lois Brown, park

and walk. (Def. Exh. 2A, video at 7:31am). That is the only evidence Walmart has

produced of any contractor on site.  The Walmart Corporate Designee agreed that

there is no evidence of scraping or of chemicals being applied. It is unclear if that

pickup truck is even a contractor for Walmart. JA444-446, JA449-450, JA453-454.

From the video the truck appears just to be driving down the aisle.

On the morning of the accident, Anthony Ware, the manager on duty, arrived

at the store at about 5:50 am, about 10 minutes before the store opened. JA499.

Store hours were 6 am to 11 pm. JA482. Normally, when the store opens, he is

required to perform an inspection of the parking lot.  He acknowledged that he

failed to inspect and said "that's on me." JA498. He parked on the opposite side of

the store as Mrs. Brown. JA498-500. When he went inside, he saw rock salt spread

on the sidewalk around the store, so it appears Walmart knew of the potential for ice and danger to their customers and took preventative measures on the sidewalk, but not in the parking spaces. JA498-499. He testified that no chemicals, salt, or other materials were in the parking lot when he went in or later that day. JA504. The parking lot had a "slushy" feel when he walked out with Lois Brown 15 minutes after she fell. JA500.

There is significant glare and shadow in the Walmart video and photos, leaving questions regarding how accurately those photos show the actual conditions on the surface of the parking lot. JA159-165; (Def. Exh. 2A, video).

## SUMMARY OF THE ARGUMENT

The District Court ruled that, in a slip and fall on ice case, the plaintiff must prove that a commercial business occupant had actual or constructive notice of the specific ice patch where the plaintiff fell. Virginia negligence law controls this case and no Virginia appellate court has enunciated such a rule.

The Court also ruled that the plaintiff had presented no evidence that the defendant failed in its duty and was negligent despite significant amounts of evidence produced by the plaintiff including Walmart surveillance videos showing no efforts to clear the parking lot where the plaintiff fell, no snow melting chemicals being applied, and no effort by Walmart to inspect the parking lot for

slick or icy spots.  In considering the evidence the Court did not consider the evidence in the light most favorable to the plaintiff.

Further, in considering the evidence, the Court considered evidence of the defendant that was disputed, weighed the evidence, and made judgments based on credibility.

## ARGUMENT

A district court's grant of a motion for summary judgment is reviewed *de novo.  Castillo v. Emergency Med. Assocs., P.A.*, 372 F.3d 643, 646 (4th Cir. 2004).  Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). The court must view the facts and the inferences to be drawn from them in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). The court must not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc*. 530 U.S. 133 (2000).

**A. The District Court Erred In Ruling That The Plaintiff Must Prove That The Defendant Had Actual Or Constructive Knowledge Of The Specific Ice Patch That Caused The Plaintiff's Fall And Injury**

This is a Virginia negligence case and Virginia substantive law applies to the duties of the defendant and the proof required of the plaintiff in such cases. *Erie R,R, Co. v Thompkins,* 304 U.S. 64, 78 (1938). No Virginia appellate court in a snow and ice case has ruled that the plaintiff must prove knowledge of the specific patch of ice or snow that led to a fall.

Under Virginia precedent, there are different types of premises liability cases with different duties attached.

### 1. <u>The General Rule</u>

First there is the general duty applicable to all cases which is set out in Virginia Model Jury Instruction 23.040.

Instruction No. 23.040 Occupant's Duty to Invitee: General
An occupant of premises does not guarantee an invitee's safety, but has the duty:

(1) to use ordinary care to have the premises in a reasonably safe condition for an invitee's use consistent with the invitation unless the invitee [knows, or should have known, of the unsafe condition; uses the premises in a manner that exceeds the scope of the invitation; goes to a place on the premises where he is not reasonably expected to go]; and

(2) to use ordinary care to warn an invitee of any unsafe condition about which the occupant knows, or by the use of ordinary care should know, unless the unsafe condition is open and obvious to a person using ordinary care for his own safety.

9

If an occupant fails to perform any of these duties, then he is negligent.

*Suffolk v. Hewitt*, 226 Va. 20, 307 S.E.2d 444 (1983); 1 Virginia Model Jury Instructions-Civil Instruction No. 23.040 (2023)(LexisNexis, Matthew Bender) (VMJI hereafter).

It is instructive that the model instruction states the duty of the occupant to warn of an unsafe "condition." A jury could conclude that an unsafe "condition" could be a slushy or slippery parking lot, or a parking lot that has seen snow, freezing and thawing temperatures which are likely to create conditions for black ice on black asphalt where no melting chemicals have been applied. Walmart knew or should have known of all of those facts.

In all cases, the plaintiff has the right to assume that the premises are safe.

> Instruction No. 23.030 Invitee's Right to Assume Safe Condition of Premises:
>
> An invitee has the right to assume that the premises are reasonably safe for his visit. This assumption does not apply if the invitee [knows, or should have known, of the unsafe condition; uses the premises in a manner that exceeds the scope of the invitation; goes to a place on the premises where he is not reasonably expected to go].

*VMJI, supra.* at 23.030.

## 2.  <u>The Specific Rule Applicable to Unsafe Substances and Objects</u>

The first separate category of premises liability cases in Virginia contains cases of foreign substances or objects creating a danger. Those cases are covered by Virginia Model Jury Instruction 23.050.

> Instruction No. 23.050 Occupant's Duty to Invitee: Remove Foreign Objects:
>
> An occupant of premises has the duty to an invitee to use ordinary care to remove a foreign substance or object from the floor if the foreign substance or object creates an unsafe condition, within a reasonable time after he knew, or should have known, <u>it was there</u>, (emphasis added) regardless of how it got there.
>
> If an occupant fails to perform this duty, then he is negligent. *Supra* at 23.050.

What is particularly instructive is the Practice Commentary from the Model Jury Committee, "If the foreign object is snow or ice on walkways, see Instruction Nos. 23-110 (Commercial Occupant's Duty to Remove Show and Ice After Storm) and 24.030 (Landlord's Duty to Remove Snow and Ice After Storm)". *Supra.* at 23-110; *supra.* at 24.030. In making that comment, the committee recognized that the duty was different where the unsafe condition resulted from a snowstorm.

Further instruction comes from a review of the cases cited by the committee for the duty contained in this instruction. Not a single one of those cases is a snow or ice case.  The cases cited are *Austin v. Shoney's, Inc.,* <u>254 Va. 134</u>, <u>486 S.E.2d 285</u> (1997)(slippery substance on restaurant floor); *Ashby v. Faison & Assocs.,* <u>247</u>

11

Va. 166, (1994)(puddle of water); *Winn-Dixie Stores, Inc. v. Parker*, 240 Va. 180, 396 S.E.2d 649 (1990)(no evidence grocer knew of bean on floor); *Memco Stores, Inc. v. Yeatman,* 232 Va. 50, 348 S.E.2d 228 (1986)(risk of danger, constructive knowledge, plant leaf on floor); *Colonial Stores, Inc. v. Pulley*, 203 Va. 535, 125 S.E.2d 188 (1962)(no evidence store knew of empty pop bottle on floor); *Great Atlantic & Pacific Tea Co. v. Rosenberger*, 203 Va. 378, 124 S.E.2d 26 (1962)(starch spilled grocery floor).

In cases of unsafe substances and objects, the duty on the occupant only arises after the occupant knew or should have known that "it was there," meaning the unsafe object or substance. The above cases stand for that proposition. Cases stating that the occupant must have notice of the specific danger are in the category of foreign or dangerous objects or substances.

### 3.  The Specific Rule Applicable to Snow and Ice Cases

The duty in a snow and ice case does not require specific knowledge that snow or ice was in a specific spot.  The words "it was there" do not appear in the duty or instruction to which we are directed by the Model Jury Instruction Committee. Notice of the risk of a potentially unsafe condition is provided by the storm itself.

> Instruction No. 23.110 Commercial Occupant's Duty to Remove Snow and Ice:
>  An occupant of commercial premises has a duty to an invitee to use ordinary care to remove ice or snow from [outdoor entrance walks;

steps; porches; stoops; parking lots] within a reasonable time after the [freezing rain; snow] stops falling.

If an occupant fails to perform this duty, then he (it) is negligent.

*Supra.* at 23.110; see also *Langhorne Road Apartments, Inc. v. Bisson*, 207 Va. 474, 150 S.E.2d 540 (1966); *Kings Markets, Inc. v Yeatts*, 226 Va. 174, 307 S.E.2d 249 (1983).

The cases cited by the committee for this instruction are all snow and ice cases. Those are *Amos v. Nationsbank*, N.A., 256 Va. 344, 504 S.E.2d 365 (1998)(plaintiff fell while snow still falling); *Mary Washington Hospital, Inc. v. Gibson*, 228 Va. 95, 319 S.E.2d 741 (1984)(ice snow on entrance walk); *Kings Markets, Inc. v Yeatts,* 226 Va. 174 (ice and snow in parking lot); *Walker v. Memorial Hospital*, 187 Va. 5, 45 S.E.2d 898 (1948)(ice/ snow still falling).

The duty of an occupant in a snow and ice case does not require an initial discovery of unsafe areas due to snow and ice. That is presumed to be likely from the storm. The natural and obvious inference from a snowstorm is that unsafe slippery conditions are likely. Even in a foreign substance case "If an ordinarily prudent person, given the facts and … knew or should have known, could have foreseen (emphasis added) the risk of danger resulting from such circumstances, (the occupant) had a duty to exercise reasonable care to avoid the genesis of the danger". *Memco Stores, Inc. v. Yeatman*, 232 Va. at 232.

13

Once a storm occurs the occupant is put on notice that there is a risk of danger from slippery surfaces upon which the snow fell. The duty is to use ordinary care to "remove" ice or snow. The question in this case for the jury is whether Walmart used ordinary care to "remove" the ice and snow from the parking lot where it directs its paying customers to park and walk.

To substantiate its opinion that the plaintiff was required to prove that Walmart had actual or constructive notice of the "specific" unsafe condition (JA564) and the District Court's requirement that the plaintiff prove Walmart had actual or constructive knowledge of "the ice patch which caused plaintiff's injury" (JA565) the court does not cite any Virginia snow and ice case, but rather cites *Hall v. DLC Mgmt. Corp*. 2013 U.S. Dist. LEXIS 58467; 2013 WL 1743865 (W.D. Va. 2013) quoting *Hodge v Walmart Stores, Inc*., 360 F.3rd 446, 453 (4TH Cir. 2004). However, *Hodge* is an unsafe object case where a mirror fell from a shelf injuring the plaintiff, and is not precedent for the duty where there has been a snowstorm. In reaching its conclusion that summary judgment was appropriate in that case, the court stated "…even assuming that the mirror display posed an unsafe condition that resulted in her injury, Hodge has neither evidence that Wal-Mart had actual notice of the condition nor evidence of when the condition arose, and thus cannot prove that the condition existed sufficiently long for a jury to conclude that Wal-Mart had constructive notice of it." *Hodge,* 360 F.3d at 451.

*Thomas v. Omni Hotels Mgmt. Corp.*, 742 Fed. Appx. 729, 2018 U.S. App. LEXIS 21459 (2018), an unpublished case cited in the District Court Memorandum Opinion, is not a snowstorm case but a leaky fountain case where the unsafe substance on the floor standard applied. JA567.

In *Hall* the district court overruled the motion for summary judgment stating "…but in this case there is a considerable lack of evidence that Food Lion and DLC had done all they could to eliminate the remaining and re-freezing ice spots in the parking lot." JA564. *Hall* was a black ice case. In the present case the plaintiff has proof that Walmart took no steps whatsoever to eliminate ice spots or potential ice spots in the parking lot.  Importantly, whether Walmart cleared the snow and ice, which the plaintiff contests, is a jury question.

The district court stated that "…mere awareness of general weather conditions is insufficient to prove constructive knowledge." JA567. That may be the case where the duty is different from a snowstorm. Here the duty is to take ordinary steps to remove snow and ice in a reasonable time after snow stops, according to Virginia negligence law. The fact that there was a snowstorm gives rise to this duty, and the plaintiff does not have to prove that Walmart knew or should have known that slippery and icy surfaces could result from such a storm. However, such proof does exist in the testimony of Steve Greco, meteorologist, who testified in his deposition that the formation of black ice in the parking lot on

15

the morning after the storm was likely, but would be patchy, occurring in some

places. JA235. He stated that ice melts on top first leaving a watery appearance on

top. JA220-221.

### 4. The Burden Placed Upon the Plaintiff By the District Court Is Unreasonable And Impossible to Meet In Most Cases

If the plaintiff in every case of slip and fall after a snowstorm is required to

prove that the occupant of a commercial business had actual or constructive

knowledge of the specific slippery spot where the plaintiff fell, then very few

personal injury cases would ever rise to that level of proof. Any Walmart parking

lot contains several acres of area and is very large. This rule would apply to any

large retail establishment.

In this case, a meteorologist testified that the formation of black ice after the

storm is likely and would be patchy in places in the lot. It just happens that the

plaintiff Lois Brown fell on one of those patches, but someone else could have

fallen in any one of other patches of ice scattered throughout a very large parking

lot. How would any plaintiff ever prove that the business knew or should have

known of the specific spot where any fall occurred?

Proof of constructive knowledge without proof that the business, in actuality,

inspected that spot is unlikely to present itself. Actual knowledge is peculiarly

within the knowledge of the business, and unlikely to be revealed without a slip of

the tongue or admission of some kind. It would be in the best interest of the

16

business to withhold such information. The rule enunciated by the District Court actually encourages any business to be willfully ignorant of conditions on the premises after a snowstorm. They are better protected from liability if they do not look for unsafe spots and do not inspect their parking lots. Then they cannot be charged with actual or constructive knowledge of any specific unsafe spot.

Such a rule is not wise from a public policy perspective. When a retail business opens and advertises for customers to come to the store, there should be some affirmative duty to make a reasonable effort to clear snow and ice, providing a safe environment for its customers. What constitutes a reasonable effort is almost always a jury question.

In this case the plaintiff has evidence from which the jury can conclude that Walmart chose to be willfully ignorant of conditions in its parking lot, made no inspection of the lot after the storm until after Lois Brown fell, scraped no snow, and did not spread any ice melting chemicals.

Virginia has always favored allowing juries to resolve wide issues of fact after being provided with guidance from instructions of the court. That should happen in this case as well.

## B. The District Court Erred in Ruling That That There Is No Evidence that Walmart Failed To Satisfy Its Duty to Maintain Its Premises

The District Court in its Memorandum Opinion again, referring to *Colonial Stores*, 203 Va. 535 (plant leaf on floor), cites the standard from foreign objects or

substances as the applicable rule. JA568. Application of *Colonial Stores* to this case is erroneous.  As set out in the argument above, the duty after a snowstorm is different from the duty in a substance or object case.

The District Court then does go on to cite the correct duty from *Langhorne Road Apts,* 207 Va. 474, but then inexplicably concludes that there is no genuine dispute as to whether Walmart met its duty. JA569-570. This is simply incorrect.

1. **The District Court Failed To Consider Evidence For The Plaintiff That Is In The Record**

The court states that the plaintiff "infers" that Walmart made no efforts at all to remove snow and ice. JA569. No inference was made.  The allegation is based on actual facts.

Walmart produced video of the parking lot taken on the morning of the fall from 7:31 a.m. to 9:31 a.m., claiming that the subject surveillance video was the only video preserved. JA156. Shade, sun, and glare present issues concerning how clear the lot really was. JA159-165. Still photos taken by the Walmart manager show snow accumulations still in the parking areas a mere fifteen minutes after the plaintiff fell. (Def. Exh. 2A, video at 8:45 am). The District Court did not review or consider that video or the Walmart photos in its recitation of facts. The video is proof of several facts.

1. By 7:30 a.m. snow had stopped falling and the sun was beginning to warm the parking lot.

18

2.  Snow is shown on trees and medians.

3.  Moisture covers the parking lot.

4.  The alleged contractor for Walmart that is supposed to clear snow and ice
    makes one pass up the driving lane near where the plaintiff parked at
    7:33:53 a.m. to 7:34:10 a.m. JA164. This is a 17 second drive without
    pause, up a driving lane, with the blade up and no chemicals being
    spread. That is evidence from which the jury can conclude that Walmart
    took no steps to treat any part of the parking lot, including the parking
    spot where the plaintiff fell, or any area within the video. It is clear from
    the entire length of that video that no one spread any chemicals or made
    any attempt to remove snow and ice from the parking spots where Lois
    parked, or anywhere in the broad area shown.

5.  Walmart's corporate designee stated that Walmart did not know whether
    anyone inspected the parking lot after the contractor left. JA435. Walmart
    produced nothing contrary to that evidence until, for the first time in the
    case, an attachment appeared in Walmart's Reply Brief to plaintiff's
    opposition to the motion for summary judgment. In that last second
    filing, which gave the plaintiff no opportunity to depose, a store
    employee, Pritt, not the manager, claims he came out and inspected the
    parking lot with the contractor at 7:30 am. That evidence clearly

19

contradicts Walmart's corporate designee's testimony, and should not be
considered, if disputed. At a minimum, the contradiction of the testimony
must be construed in the plaintiff's favor.  In addition, the video not only
disputes the claim of Pritt, but completely disproves it. For 2 hours, from
7:31 a.m. until 9:31 a.m., no Walmart employee appears in the video even
walking near the area where Lois Brown parked.  In fact, no employee is
seen in the parking lot and the corporate designee could not identify an
employee in the parking lot.  Yet the District Court recited as a fact that
"Pritt inspected the parking lot" and used that alleged act as conclusory
proof that Walmart satisfied its duty of care. JA566.

Walmart, by its designee who speaks for Walmart, admits it had no
knowledge of anyone inspecting the lot, and then attempts to contradict itself by
producing a last second affidavit by an employee claiming the opposite. The
admission by the Walmart designee, even without other evidence, constitutes
evidence of a dispute as to whether there was any inspection. Walmart is charged
with knowledge of what is seen in the videos (i.e. no scraping or chemical
application took place). Failure to inspect for unsafe areas is a violation of the duty
of ordinary care and is negligence. Part of ordinary care to remove ice and snow
includes looking to see where ice and snow exists. After a snowstorm, with

freezing and melting conditions, it is reasonably foreseeable that unsafe conditions would exist.

**2.** **Additional Facts In The Record Provide Evidence From Which a Jury Could Conclude That Walmart Failed In Its Duty**

The videos produced by Walmart are direct evidence that Walmart did not make any effort to clear snow and ice from the parking lot where Lois Brown fell. Those videos also are direct evidence that no Walmart employee inspected the parking lot area where the fall occurred. The still photos of the area where Lois Brown fell, taken by the store manager shortly after the fall, show snow and ice accumulations. Taken together those visual representations of events after the storm ended are sufficient evidence, viewed in the light most favorable to the plaintiff, to make a jury issue.

Walmart argues that it did not know of slippery conditions where the plaintiff fell, arguing that it could not see black ice. However, if Walmart had performed its duty and spread ice melting chemicals, or scraped the lot, then the black ice would not have formed.  If any employee had looked out a window and observed that the alleged contractor neither scraped nor applied chemicals in the area where Lois Brown parked and exited her car, then it should have known that unsafe conditions were likely.

Additional facts buttress the visual evidence from video and photos, further constituting proof that Walmart did not exercise ordinary care to remove snow and

21

ice, and made no inspection of the parking lot at all, thus remaining willfully ignorant of the conditions in the lot that entire morning.

Additional facts in the record constitute proof that:

- There was no pre-treatment prior to the widely predicted storm (Walmart claims that the video at 7:33:53 a.m. was its effort to clear snow and ice, but that is well after the storm ended). JA165.

- That neither clearing nor scaping took place, and no chemicals were applied to the lot before the store opened and customers began parking in the parking areas (the contractor in the video arrived an hour and half after the store opened at 6 am). JA165; (Def. Exh. 2A, video at 7:33 am).

- That if the truck in the video is a contractor as alleged by Walmart, it was spreading no chemicals and scraping no ice or snow. JA165, JA471; (Def. Exh. 2A, video at 7:33 am).

- That no one inspected the work of the contractor. The manager did not inspect when he arrived and the video proves no one inspected from 7:31 a.m. until the end of the video footage at 9:30 a.m. (Def. Exh. 2A, video); JA498.

- That at the time of the fall, the parking lot had a "slushy" feel to the surface. JA500. A jury can conclude that "slushy" indicates slippery melting

conditions and also conclude that if there was slush then there had been little if any scraping of snow and ice.

- That Walmart had actual knowledge of the risk of ice and spread rock salt on the sidewalks near the store. JA498-499.

- No Walmart employee deployed chemicals in the parking lot because Walmart does not allow employees to seek out ice in the parking spaces and treat those spots that may be a danger to customers. JA420.

- That the manager knew the parking areas were very slick, almost falling himself, which occurred before plaintiff's fall. JA114.

- That no chemicals had been spread in the parking lot that morning even though employees did so on sidewalks near the store (also indicating knowledge of icy conditions). JA488, JA500.

- Q    Okay.  Did you see any evidence of any material chemicals or salt that was spread?   A    Not on the -- like, the asphalt, but just the sidewalk. JA500.

- Q    Was there any evidence that there was any chemicals or salt put in the parking spots?  A    Not in the parking spots. JA504.

- After her fall the plaintiff's clothes had no salt or chemicals on them even though she laid on the asphalt surface. JA116-117.

- The snow stopped at 6:15 a.m. and Walmart took no steps to remove or treat ice and snow in the parking areas for the 2 hours and 15 minutes from the time snow stopped until the fall. JA214. Video from 7:31 to 8:31 shows no efforts, Walmart designee testified employees are not allowed to do that (JA420), the above facts indicating no scraping or chemicals were present in the lot.

- That there was no communication from Walmart higher management regarding the widely predicted storm. JA423.

- That Walmart had no information whatsoever regarding what any contractor did on that day so cannot counter the statements of the manager that the lot was poorly cleared, that no chemicals were applied, and the Customer Incident Report that Lois Brown fell on ice. JA433-438.

In summary, there is significant evidence, viewed in the light most favorable to the plaintiff, from which a jury could find that Walmart failed to use ordinary care to remove ice or snow from the parking lot areas where customers are required to park and exit their vehicles. Walmart may attempt to dispute the evidence of the plaintiff, but resolution of such disputes is within the sole province of the jury.

## C. The District Court Erred In Making Credibility Determinations and Weighing the Evidence

In numerous instances the District Court considered evidence that was disputed or resolved, made credibility determinations or weighed the evidence.

At page 3 of the Memorandum Opinion the court, in its statement of facts recites allegations from the Pritt affidavit. JA562. As previously stated, the allegations of Pritt are disputed and the videos prove he could not have inspected the lot or known the facts he has alleged. His allegations are refuted by the Walmart designee.

In footnote 1 on page 3 of the Memorandum of Opinion, the District Court notes that the manager disputes the statement attributed to him by the plaintiff that he "almost busted his ass" getting out of his car in the parking lot. JA562. The court thus gives credence to a contrary statement in the record rather than viewing the evidence in the light most favorable to the plaintiff. The court goes on to consider the deposition of Ware denying that he had difficulty exiting his car. JA565. The court should consider only the evidence that such a statement was made and the inferences that a jury could possibly draw therefrom. That statement, from the person in charge of the store and the premises, is evidence of knowledge of the unsafe surface in the parking lot. If the manager disputes that, then there is an issue of genuine dispute. Credibility is not for the court to decide at the summary judgment stage of the proceedings.

25

The court goes on to question the credibility of the plaintiff reciting a portion of the deposition where, in response to a question from counsel for Walmart, she says she assumed Ware was speaking of the parking lot. JA565. The court states at page 6:

> "Ware's statement does not specifically refer to the Walmart parking lot, and Brown testified that she only "assum[ed]" that the statement referred to the Walmart parking lot. Dkt. 27-1 at 76:5–10. Indeed, Ware testified that he did not have any difficulty exiting his vehicle or entering the store when he arrived at work. Dkt. 31-13 at 16:17–17:12. A reasonable juror viewing these facts would have to "resort to speculation and conjecture" to find that Ware's statement referred to the Walmart parking lot"

Here is what Lois Brown actually said in lines 6-17 of her deposition:

> "Q    Did he say it was in the parking lot, the Wal-Mart parking lot?
> A    He didn't say, but I'm assuming it was.  Q    Right, but that's why I'm asking. Did he say that?  A    No.  Q    So what specific, I want to know the specific terms as you can recall as we sit here today what you remember Mr. Ware saying to you.   A    He said, "I almost bust my ass in the parking lot this morning. I was able to grab onto my door handle." Then he started talking about the crew not coming on time to clean the parking lot.

JA115.

Not only does the court take the word "assumed" out of context, but the court goes on to say that a juror would have to speculate to find that Ware's statement refers to the parking lot when Mrs. Brown clearly states he said "the parking lot."  In addition, she then referred to the contractors who were supposed to clear the Walmart "parking lot."

The only conclusion that can be reached from those statements by the Walmart manager is that the parking lot was dangerous and that Walmart knew it. Yet the court says a juror would have to resort to speculation to reach that conclusion. Clearly, the court did not consider all of plaintiff's testimony, which was a critical fact. Not only did it not consider the evidence, it did not even look through the lens of the light most favorable to the plaintiff. The court says that such evidence is remote in time, but remaining willfully ignorant of the condition of the parking lot thereafter is a violation of the duty of ordinary care.

## CONCLUSION

Summary Judgment was not appropriate in this case. It is requested that the decision of the District Court be overruled and reversed and that this matter be remanded to the District Court with direction that the court reconsider the Motion for Summary Judgment in light of the opinion of this court.

## STATEMENT OF ORAL ARGUMENT

Lois Brown would like to present oral argument to highlight and emphasize the errors that occurred, particularly the overwhelming amount of evidence that shows negligence on the part of Walmart.

Respectfully submitted, March 19, 2024,

*s/ A. David Hawkins*

A. David Hawkins
(VSB#12625)
OVERBEY, HAWKINS,
WRIGHT & VANCE, PLLC
776 Village Highway
Post Office Box 38
Rustburg, Virginia 24588
Phone: 434-332-5155
Fax: 434-332-5143
dhawkins@overbeylaw.com

*s/ Chad A. Mooney*

Chad A. Mooney
(Va. Bar #75211)
PLDR Law, PC
P.O. Box 1080
Lynchburg, VA 24505
Phone: 434-846-2768
Fax: 434-847-0141
cmooney@pldrlaw.com

*Counsel for Appellant*

## **CERTIFICATE OF SERVICE**

I certify that, on March 19, 2024, I electronically filed the foregoing Opening Brief of Appellant with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

I further certify, that on March 19, 2024, I served Joint Appendix Volume II - Digital Media, as previously agreed, electronically, on counsel listed below:

Victor S. Skaff, III
vskaff@glennrob.com
Kathleen T. Allen
kallen@glennrob.com
GLENN ROBINSON CATHEY SKAFF & WHITE PLC


*s/ A. David Hawkins*
A. David Hawkins